[Civil No. 4747. Filed December 10, 1945.]

[164 Pac. (2d) 465.]

WILLIAM JOHN McCAULEY, Appellant, v. ROBERT L. (BOB) STEWARD and MADISON MOTORS, INC., a Corporation, and GRAY MADISON and C. M. BERGE, a Co-partnership, Doing Business Under the Name and Style of MADISON MOTORS, Appellees.

Mr. Fred V. Moore and Mr. Frank Dykes, for Appellant.

Messrs. Moore, Romley & Roca, for Appellees.

STANFORD, C. J.—In this opinion we will hereinafter call the appellant the plaintiff and the appellees the defendants.

Robert L. Steward was an employee of Madison Motors on a commission basis to sell used cars at its lot located at 300 East Van Buren Street, Phoenix. His hours were approximately from 8:30 A. M. to 6 P. M. He could demonstrate the cars being shown, but could not take cars and drive around to find a buyer, but he was permitted to take a car and drive it home at night and back in the morning. Otherwise, on

account of gasoline rationing, he was not allowed to use the cars for his own personal pleasure or business. Steward lived at 1513 Earll Drive. His usual course home was to go north to Thomas Road, then west to 15th Avenue and then north to Earll Drive. Earll Drive is about four blocks north of Thomas Road, and does not run through in many places. On October 13, 1943, the date of the accident, Steward left the car lot at about 6 o'clock but instead of going directly home he went to visit a lady friend, the visit having no connection with the sale of a car, the location of whose home was on Indianola Avenue south of Indian School Road, almost a mile out the path of travel to his home. Steward took the course of Third Street to go and visit with his friend for about one and one-half hours. When returning, he returned south on Third Street and just before reaching Earll Drive he ran into the plaintiff who was accompanying another person southward while waiting for the street car. Plaintiff was severely injured.

When the evidence was closed Madison and Berge, as the Madison Motors, moved the court for an instructed verdict, which motion was denied. After verdict, which was rendered in favor of plaintiff against Steward, Madison and Berge, the latter two moved for a judgment notwithstanding the verdict. That motion was also denied. The trial court then in relying on the powers invested in it by Sec. 21–1015, Arizona Code Annotated 1939, before the expiration of ten days after the jury was discharged, caused the following minute order to be entered:

"It is further ordered that the Motion of defendants Gray Madison and C. M. Berge, co-partners doing business as Madison Motors, for judgment notwithstanding the verdict is granted."

The section of our code relied on by the court, Sec. 21–1015, *supra* is as follows:

"*Reservation of decision on motion for directed verdict.*—Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury *subject to a later determination of the legal questions raised by the motion.* Within ten (10) days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within ten (10) days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial." (Italics ours.)

The plaintiff presents three brief assignments of error.

"1. That the court erred in refusing to grant plaintiff's motion for judgment in accordance with the verdict."

"2. That the court erred in granting the motion for judgment *non obstante veredicto* of the defendant Madison Motors, a co-partnership, consisting of Gray Madison and C. M. Berge."

"3. That the Court erred in overruling the plaintiff's motion for a new trial."

The complaint alleged that the accident complained of occurred on October 31, 1943, at or about the hour of 7 o'clock in the evening.

The testimony of C. M. Berge, one of the defendants and member of the partnership of Madison Motors, in

respect to the use of the car in question, was as follows:

"Q. Was there any particular reason, Mr. Berge, why Mr. Steward and other salesmen were not privileged to use the automobiles on the used car lot for their own pleasure or business? A. Well, yes. You all know that we have very strict regulations on gasoline and also the rubber situation is very critical. In fact, they are cautioned continuously to be careful with the gas where we are allotted so much gas for the number of automobiles that we have on hand, and even if cars are demonstrated too much and you run out of gas that car has to sit idle until the next month when your allotment comes out for the gas."

The trial court instructed the jury, in part, as follows:

"Therefore, I instruct you, gentlemen of the jury, if you find a verdict against the defendant Steward you would also be obligated to find the same verdict against the defendants C. M. Berge and Gray Madison, because as a matter of law the Court is now of the opinion that the agency did exist."

It was after that instruction, and after the verdict rendered thereon, that the defendants moved for a judgment notwithstanding the verdict. The motion was at that time denied, but later, as stated, it was granted.

The plaintiff bases his appeal, in part, on the following cases: *Bryan* v. *Inspiration Consolidated Copper Co.*, 23 Ariz. 541, 205 Pac. 904 and *Welch* v. *United Mutual Benefit Association*, 44 Ariz. 198, 36 Pac. (2d) 256. The part of those cases affecting this matter are set forth in the following taken from the case of Welch v. United Mutual Benefit Association, *supra:*

" . . . Courts are reluctant to instruct a verdict, and in the hurry of a contested trial, unless it is so clear a motion for an instructed verdict should be granted that no reasonable argument to the contrary can be made, are very apt to deny such motion, when a later and more deliberate consideration of the evidence makes it evident that the motion should have

been granted. Under such circumstances, it does seem rather useless to summon a new jury and go through the formalities of a new trial when all parties know there can be but one result, which would be reached with much less waste of time and money by granting a motion for judgment *non obstante veredicto*. But this court has held specifically and emphatically, in *Bryan v. Inspiration Consolidated Copper Co.*, 23 Ariz. 541, 205 Pac. 904, 909, that: 'In the absence of a statute permitting it, a court may not render judgment notwithstanding the verdict merely because it deeems the verdict unsupported by the evidence.' . . . "

█ Plaintiff conceded that the trial court relied on rule 50(b), Rules of Civil Procedure, Sec. 21–1015, Arizona Code Annotated 1939, *supra*. Plaintiff contends that said rule 50(b) does not apply in the instant case because it

" . . . is bottomed upon the fact that the court is deemed to have submitted the action to the jury subject to a later determination of a legal question raised by the motion.

"In the instant case the court did not submit the issue of agency to the jury. He made a definite ruling upon it and instructed the jury as to what their verdict should be in the event they found against the defendant Steward."

We see no merit to this contention. If the motion for the directed verdict should have been sustained rather than denied, and the court erred in that respect, the second error in instructing the jury that the moving defendants were liable would not prevent them, after the reception of the verdict, from again moving to have the verdict and any judgment entered thereon set aside. The action, under such circumstances, is deemed submitted to the jury, and the court has the power, as provided in Sec. 21–1015, *supra* Rule 50(b), to correct his ruling in originally denying the motion for directed verdict if, in fact, there was no evidence to sustain the plaintiff's case.

Before further proceeding it is important that we call attention to further parts of the testimony. Defendant Robert L. Steward, under cross-examination, stated:

"Q. And you had been visiting a friend of yours just before the accident occurred, had you not?

. . . . . . . . . .

"A. Yes, that is right.

"Q. Was the purpose in seeing this friend related to the performance of any of your duties with Madison Motors or on your own personal pleasure?

. . . . . . . . . .

"A. I paid a personal call.

"Q. You had made a personal call? A. That is right. It wasn't company business at the time I drove there, no. I just stopped to see a friend.

. . . . . . . . . .

"Q. Now, this car which you took, this 1939 Dodge which you took off the lot that evening, were you going to show that car that evening to a prospective customer? A. Well, I could have later after I had gone home. My father, I was going to take it over there— his car had been stolen that morning and after I had dinner that evening I was going to take it over to my father's house, which would have been a prospect."

Testimony of defendant C. M. Berge is as follows:

"Q. Did you furnish an automobile to Robert Steward? A. Yes.

"Q. For what purpose? A. Well, he didn't have an automobile and he had to come back and forth to work, so he was allowed to take the car from the lot when he got through work to take home and come back in the morning.

"Q. Was he allowed to take it for any other purpose? A. Not unless he had a definite prospect to take it and show it to.

"Q. Was he allowed to use the car for his own personal business or pleasure? A. No, sir."

The trial court, as evidenced by later granting defendant's motion, changed its opinion. It had errone-

ously instructed the jury on the issue of agency. We hold that, whether the trial court's order under rule 50(b) was with reference to the defendants Madison and Berge's motion at the close of the evidence in the case, or in reference to the motion for judgment notwithstanding the verdict, it is unimportant in the case. The ruling clearly shows the intention of the trial court.

We feel justified and supported in this holding by the case of *Valanda* v. *Baum & Reissman, D. C.,* 31 F. Supp. 71, 72, wherein the court held:

"Under Rule 50(b) of the Rules of Civil Procedure for the District Courts of the United States, 28 U. S. C. A. following Section 723c, defendants' motion should be to set aside the verdict and the judgments entered thereon, and to have judgment entered in accordance with defendants' motion for a directed verdict. However, since in substance they are here the same, the court will treat defendants' motion for judgment n. o. v. as if it were a motion strictly conforming to Rule 50(b)."

The Valanda case, *supra,* was reversed in 3 Cir., 113 Fed. (2d) 188, but not on the grounds above mentioned.

On the subject of whether Steward was the agent of Madison and Berge at the time of the accident, plaintiff refers to Restatement of the Law, Agency, § 236, pages 529, 530, and quotes:

"An act may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person."

We pause to again refer to the evidence. Steward was allowed to take the car home at nighttime. During his trip home on this night he intended to show the car to his father, but before eating his dinner, or showing the car to his father, he left his usual way of travel, which was going on Third Street as far as Thomas Road and then turning west to 15th Avenue, then north

to Earll Drive, then a very short distance to his home. He could not go to Earll Drive, near where the accident later occurred and then go west because, as stated, Earll Drive was closed in the western part of the country where he had to travel and he had to return from his visit to his lady friend on Indianola Avenue, nearly one mile north of Thomas Road, by the way of Third Street to get to Thomas Road and then go home.

 We think the rule is more properly stated in Restatement of the Law, Agency, § 234, page 524, under "comments":

" . . . If the driving is an independent journey as distinguished from a mere detour, the servant is upon an enterprise of his own and the master is not liable for his conduct during the trip."

The latter view is supported by recent Arizona cases, namely *Peters* v. *Pima Mercantile Co.*, 42 Ariz. 454, 27 Pac. (2d) 143, 145. The driver of the truck was directed to go from Marana, Arizona, to Tucson, Arizona, to bring back a load of merchandise. The driver, without knowledge of the owner of the truck, after reaching Tucson, drove to a veterinary hospital to pick up a dog to return it to Marana for a friend. On the way back to the mercantile establishment in Tucson, where he was to load his truck, an accident occurred. Peters brought an action against Pima Mercantile Company for damages. The court in that case directed a verdict for the defendant Mercantile Company. In the opinion of this court we said:

"It is clear from these facts that his mission to Tucson that day was to procure certain articles of merchandise for the store and take them to Marana in the truck, and, this being true, it becomes plain that in taking the trip to the hospital for the dog he was not doing what he was instructed to do, but for that period of time stepped aside from his employment to perform an independent act of his own in no way connected with the work he had been directed by his employer

to perform. And since he was not acting for his employer but for himself during that period, he and not the former was liable for any damage he might have caused a third person by negligently running into his car. . . . "

From the case of *Johnston* v. *Hare,* 30 Ariz. 253, 246 Pac. 546, we quote:

" . . . On the evening of December 27th the two of them had gone to the Rialto Theater in the car, and after the show had driven to the Bear Drug Store, at the corner of Washington Street and Second Avenue, for a drink of Coca-Cola. On coming out of the drug store defendant, stating that he would walk to the Club, asked Sanders to take the car to the garage, a distance in a direct line of 1½ blocks, but to get to which, as the car was parked, it was necessary to go 3½ blocks to comply with the law of the road. Sanders started as directed to return the car to the garage, but instead of doing so he proceeded to go to the home of a friend on North Seventh avenue, some thirteen blocks away from garage, and while driving west on McKinley street, at the junction of Sixth avenue, collided with the plaintff's car. . . .

. . . . . . . . . .

"If Sanders at the time of the accident was defendant's agent, defendant would be liable for any injury negligently inflicted by him upon one exercising due care. But, under all the evidence, Sanders' agency was limited to taking defendant's car back to the garage. When he failed to do that and instead appropriated the car to go on an errand of his own, for his own pleasure and business, his agency ceased, and he no longer was acting for defendant."

Among other cases cited by plaintiff is *Cox* v. *Enloe,* 50 Ariz. 201, 70 Pac. (2d) 331, 332. Ewing, the driver of a truck, had just returned to Tucson from a trip to Nogales for his employers. He was immediately directed to, during the nighttime, go to Phoenix and bring back certain fruit and produce.

" . . He immediately told Cox that before he went to Phoenix he wanted to go home and get his coat and his dinner. To this request Cox assented. . . .

"We will consider first whether the jury was justified in finding from the evidence that at the time of the accident Ewing was acting in the course of his employment, as this is the principal question involved in the appeal. Under the rule of respondeat superior, the negligence of an employee is imputed to his employer, and the latter must answer in damages for such negligence. This rule, however, is subject to the qualification that if the employee at the time of the accident had abandoned his employment and was engaged in personal and private affairs not connected with the business of the employer, there is no liability on the part of the latter. *Otero* v. *Soto,* 34 Ariz. 87, 267 Pac. 947; *Schneider* v. *McAleer,* 39 Ariz. 190, 4 Pac. (2d) 903; *Peters* v. *Pima Merc. Co.,* 42 Ariz. 454, 27 Pac. (2d) 143. . . . "

This court upheld the trial court in a judgment given to Enloe who was injured by the truck owned by Lester A. Cox and A. B. Cox, a partnership, on the grounds that Ewing, the employee, had not abandoned his employment and was not engaged in his personal or private affairs at the time of the accident. We see no comparison in the cases.

Our law on this subject has already been established and we cannot vary from it although this worthy young plaintiff has suffered greatly by reason of this injury. Adhering to opinions as heretofore handed down by this court, we cannot find any legal basis to hold defendants Madison and Berge liable.

The judgment is affirmed.

LAPRADE and MORGAN, JJ., concur.